No. 2710

Second Circuit

ALEXANDER, BOLTON & LEWIS INS. CO. AGENCY

v.

MAYER

(June 28, 1927. Opinion and Decree.)

*(Syllabus by the Court)*

1. **Louisiana Digest—Prescription—Par. 107.**

A verbal acknowledgment of or promise to pay an open account before prescription has run against it interrupts prescription.

Bennett-Brewer Hardware Co. vs. Wakeman, 2 La. App. 376.

2. **Louisiana Digest—Appeal—Par. 625.**

When the evidence is conflicting and the issue one of fact, the appellate court will give great weight to the finding of the trial judge, and his decision will not be disturbed unless manifestly erroneous.

Appeal from the Ninth Judicial District Court of Louisiana, Parish of Rapides. Hon. Leven L. Hooe, Judge.

Action by Alexander, Bolton & Lewis Insurance Agency, Ltd., against Dave Mayer.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Thornton, Gist & Richey, of Alexandria, attorneys for plaintiff, appellee.

T. A. Carter, of Alexandria, attorney for defendant, appellant.

## STATEMENT OF THE CASE

REYNOLDS, J. There is a suit on an open account for eight items of debit for premiums on fire insurance policies issued to defendant during the year 1920 and aggregating $325.86, less a credit of $104.61, leaving a balance claimed of $221.25.

Defendant denied liability and pleaded the prescription ·of three years. He also reconvened for $55.00 unearned premium.

On these issues the case was tried and there was judgment in favor of the plaintiff in the sum of $221.25, with ·legal interest thereon from January 1, 1921, and in favor of the defendant on his reconventional demand in. the sum of $49.27. ·

## OPINION

This is a suit on an open account for the premiums on policies of insurance issued by plaintiff to defendant during the year 1920, less credit for unearned premiums on certain policies that were cancelled. Plaintiff alleges that on several occasions during the years 1921, 1922, 1923 and 1924 the defendant acknowledged the continued existence of the debt and promised to pay it.

The dates and amounts of the several debits, as set out in the petition and sworn to by R. C. Bolton, the secretary-treasurer of the plaintiff, are as follows:

| | |
|---|---|
| January 27, 1920 | $ 18.75 |
| February 28, 1920 | 45.00 |
| March 25, 1920 | 15.00 |
| March 25, 1920 | 7.00 |
| March 25, 1920 | 26.25 |
| October 1, 1920 | 140.42 |
| October 1, 1920 | 28.44 |
| Making a total of | $325.86 |

And the dates and amounts of the credits on the account are as follows:

| | |
|---|---|
| October 1, 1920 | $ 21.87 |
| October 1, 1920 | 6.84 |
| October 1, 1920 | 6.25 |
| October 1, 1920 | 5.42 |
| October 1, 1920 | 14.60 |
| October 1, 1920 | 21.75 |
| October 1, 1920 | 5.83 |
| January 24, 1921 | 22.05 |
| Making a total of | $104.61 |

R. C. Bolton, secretary-treasurer of plaintiff, testified (Evidence, pages 2, 3, 13):

"Q. I hand you documents marked 'Plaintiff 1' and 'Plaintiff 2' and ask you if these statements show a true and correct itemized account of the statement of the amount which Mr. Mayer owed the Alexander, Bolton & Lewis Insurance Agency, Ltd., less the credits shown thereon?

(The documents shown witness corresponded to the debits and credits above copied.)

"A. (Witness examines statement above referred to.) Yes, sir; this statement is correct.

"Q. Is this 'Plaintiff 2' the only credit due against the amount?

"A. With the exception of the refund due to the cancellation; that does not enter into this; that is a separate item of which we have a record.

"Q. That item has nothing to do with these items?

"A. It has to do with the fifth installment which was cancelled and there is a refund due on $49.27, I think it is; I think that is the correct amount.

"Q. Well, would this account of $221.25 be subject to that additional credit?

"A. Yes, sir; $49.27.

"Q. The $49.27?

"A. Yes, sir.

"Q. These items on the account show as having been charged in January, February, March and October of 1920. Did Mr. Mayer ever state to you whether or not he owed these amounts, and whether or not he was going to pay you?"

This question was objected to by the defendant as incompetent, irrelevant and immaterial, but the objection was overruled by the court, and the defendant excepted and on his request the same objection, ruling and exception was made to apply to all similar questions.

"A. Yes, sir.

"Q. Do you remember, approximately, the dates on which Mr. Mayer acknowledged to you that he owed these items?

"A. I cannot remember the dates, but Mr. Mayer made repeated promises to pay the account at a number of different times; in fact, I frequently saw him on the streets of Alexandria and would speak to him about the account, and he would say: 'Well, I am not in a position to pay it now, but I am going to take care of it; and in one or two instances he said as soon as my hay is cut I will pay it out of the proceeds of my hay'.

"Q. When did he say that?

"A. He has promised it ever since the policies were due until a short time before the policies expired.

"Q. Did he admit to you owing this account and promise to pay it in 1920?

"A. Yes, sir.

"Q. In 1921 did he acknowledge it and promise to pay it?

"A. Yes, sir.

"Q. In 1922 did he acknowledge owing it and promise to pay it?

"A. Yes, sir.

"Q. During the year 1923, did he make the same acknowledgment and promise?

"A. Yes, sir.

"Q. What about 1924?

"A. Yes, sir.

\* \* \* \*

"Q. The items charged on this account were not included in any notes to the Hartford Fire Insurance Agency, were they?

"A. No, sir.

\* \* \* \*

"Q. Are you still positive in your mind that during each of the years, 1921, 1922, 1923 and 1924, you had a conversation with Mr. Mayer about this account, and that he acknowledged it and promised to pay you?

"A. Yes, sir."

F. J. Blanchard, called by the plaintiff, testified, pages 13, 14, 17:

"Q. I hand you documents marked 'Plaintiff 1' and 'Plaintiff 2' and ask you if you are familiar with that account covered by that statement?

"A. Yes, sir, I am, except for the credit memorandum in 1925.

"Q. Did you ever have occasion to say anything to Mr. Mayer about this account during the years that you were working there for the Alexander, Bolton & Lewis Agency?

"A. Yes, sir.

"Q. Will you state what those conversations were, and about when?

"A. In October, 1920, the special agent for the Hartford Fire Insurance Agency wrote this farm schedule at Mr. Mayer's place. After January, 1921, when policies were received and the account had become past due, I made trips at different intervals to Mr. Mayer's place and requested payment.

"Q. What did Mr. Mayer say on this occasion? I mean on these occasions?

"A. Different things; that he could not pay at that time; that he did not have the money.

"Q. Did he or not say that he would pay?

"A. Yes, sir.

"Q. And that he owed them?

"A. Yes, sir.

"Q. Do you remember what years those trips covered?

"A. 1921, 1922 and 1923.

"Q. You made trips to see him in each one of those years?

"A. Yes, sir.

"Q. Did he admit that he owed it?

"A. Yes, sir.

"Q. Did you go there as a representative of the plaintiff company?

"A. Yes, sir.

\* \* \* \*

"Q. I said, it is clear to your mind, notwithstanding the fact that you cannot remember even the year, that Mr. Mayer promised to pay the account?

"A. I did not say that I could not remember the year that Mr. Mayer promised to pay the account, because he promised it each time that I went to see him."

The defendant, Dave Mayer, testified, pages 20, 21, 22:

"Q. Mr. Mayer, how much were these notes, the principal of these notes, that you have sued on?

"A. $168.00 a year for five years.

"Q. $168.00 a year for five years?

"A. I sent to the Hartford Fire Insurance Agency every year $168.00.

"Q. Do you mean to say that there were five notes?

"A. No, sir; just one note, I think. It is on record here; and Mr. Provosty sued and got judgment for the balance of the note, and it is in the courthouse here now on record.

"Q. Are you certain that there were five installments on that note of $168.00 each?

"A. I guess so; it was one piece of paper and I signed it.

"Q. You did not agree to pay the first installment cash, and then give a note for the other four installments?

"A. I don't know anything about it.

"Q. You do not deny that the first installment on that policy was to be paid in cash, do you?

"A. I could not say; I know that I gave the notes for the policy.

"Q. But you don't mean to say that this suit to which you have reference, and the note that was included therein, covered the first installment on this policy, do you?

"A. Well, that was a five-year note for $168.00.

\* \* \* \*

"Q. You never told them that you did not owe the account?

"A. I don't know what the account is for."

It is clear from this evidence that the defendant (as is the custom with many business men) left his insurance matter entirely to his insurance agent and depended entirely on the agent to keep an account of debits and credits on account of insurance premiums.

It is also clear from the evidence that defendant owed plaintiff five installments of $168.86 each for premiums on an insurance policy issued by the Hartford Fire Insurance Company and that he closed only $675.44 in a promissory note, leaving $168.86 to be carried on open account. He paid on the note $506.58 and for the balance of $168.86 the Hartford Fire Insurance Company obtained judgment against him.

No part of the debt represented by the open account sued on herein was embraced in that judgment. This was explained by defendant's witness, Bolton, who testified, page 6:

"Q. Was that account closed by these notes?

"A. No, sir; this account of ours is not closed out by notes. This account does not represent notes at all.

"Q. You just stated that it did?

"A. I said the original policy. I shall be glad to explain that. The Hartford Fire Insurance Company issues policies on the 5-year plan, 20% payable annually; in other words, five installments. The first installment is a cash installment, due when the policy is delivered. The remaining installments are payable annually thereafter, and it is the cash installment that is due on this account, plus earned premiums on policies that were issued and later cancelled and included in this form schedule."

On trial defendant objected to the admission of parol evidence to prove admissions on his part of the existence of the debt or promises by him to pay it. As the debt was not yet prescribed at the time of the admissions and acknowledgments the testimony was admissible.

Bennett-Brewer Hardware Co., Inc., vs. Joseph P. Wakeman, 2 La. App. 376.

Defendant claimed in reconvention, $55.00, and the plaintiff, on trial, conceded that he was entitled to an additional credit of $49.27, and the judgment appealed from gave defendant credit for this additional amount.

The trial judge saw and heard the witness testify and gave plaintiff judgment for the amount claimed by it, and defendant judgment for $49.27 on his reconventional demand. After carefully reading the record we are convinced that the judgment of the District Court is right.

It is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed.